**UNITED STATES DISTRICT COURT**            **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 4:15-CR-111 (8) |
| | § | |
| FREDY MEJIA-SANTAMARIA | § | |

**MEMORANDUM AND ORDER**

Pending before the court is Defendant Fredy Mejia-Santamaria's ("Mejia-Santamaria") *pro se* Motion for Compassionate Release (#165), wherein he requests compassionate release due to medical circumstances.  The Government filed a response in opposition to Mejia-Santamaria's motion (#170), to which Mejia-Santamaria replied (#173).  United States Probation and Pretrial Services ("Probation") conducted an investigation and recommends that the court deny Mejia-Santamaria's motion for compassionate release.  Having considered the pending motion, the Government's response, Mejia-Santamaria's reply, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I.    Background

On June 11, 2015, a grand jury in the Eastern District of Texas returned an Indictment charging Mejia-Santamaria and 7 codefendants in Count 1 with Conspiracy to Possess with the Intent to Manufacture and Distribute Cocaine, in violation of 21 U.S.C. § 846, from January 2008 to June 10, 2015; in Count 2 with Conspiracy to Import Cocaine and to Manufacture and Distribute Cocaine Intending and Knowing that the Cocaine Will Be Unlawfully Imported into the United States, in violation of 21 U.S.C. § 963, from January 2008 to June 10, 2015; and in Count 3 with Manufacturing and Distributing Cocaine Intending and Knowing that the Cocaine Will Be Unlawfully Imported into the United States, in violation of 21 U.S.C. § 959 and 18 U.S.C. § 2,

from January 2008 to June 10, 2015.  On August 30, 2018, Mejia-Santamaria pleaded guilty to Count 1 of the Indictment pursuant to a non-binding plea agreement.  The remaining counts were dismissed on the Government's motion.  On January 22, 2019, the court sentenced Mejia-Santamaria to 135 months' imprisonment, followed by a 2-year term of supervised release.  Mejia-Santamaria is currently housed at Giles W. Dalby Correctional Institution ("CI Giles W. Dalby"), located in Post, Texas.  His projected release date is November 2, 2026.

II.    Compassionate Release

On December 21, 2018, former President Trump signed the First Step Act of 2018 into law.  *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194.  The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> (A) the court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction; or
> >
> > (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

2

18 U.S.C. § 3582(c)(1)(A).  This provision is commonly referred to as "compassionate release."

A.    Exhaustion of Administrative Remedies

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release.  *See United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) ("Prior to the passage of the First Step Act . . . courts lacked the power to adjudicate motions for compassionate release."), *cert. denied*, 141 S. Ct. 920 (2020); *Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP).  The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf.  *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019).  The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement.  18 U.S.C. § 3582(c)(1)(A); *United States v. Garrett*, 15 F.4th 335, No. 20-61083, 2021 WL 4343293, at *1 (5th Cir. Sept. 24, 2021) ("[T]o file a proper motion for compassionate release in the district court, a prisoner must first exhaust the available administrative avenues."); *Franco*, 973 F.3d at 467 (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional but that it *is* mandatory"); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion

requirement . . . presents a glaring roadblock foreclosing compassionate release."). Thus, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request.  18 U.S.C. § 3582(c)(1)(A); *Garrett*, 2021 WL 4343293, at *2 ("[A]n inmate has two routes by which he may exhaust his administrative remedies.  Both begin with 'requesting that the [BOP] bring a motion on the defendant's behalf.'" (quoting *Franco*, 973 F.3d at 467)); *United States v. Harris*, 812 F. App'x 106, 107 (3d Cir. 2020); *United States v. Springer*, 820 F. App'x 788, 791 (10th Cir. 2020) (defendant "was required to request that the BOP file a compassionate-release motion on his behalf to initiate his administrative remedies" (citing *Raia*, 954 F.3d at 595)); *Alam*, 960 F.3d at 833-34; *United States v. Soliz*, No. 2:16-190-3, 2020 WL 2500127, at *3 (S.D. Tex. May 14, 2020) ("§ 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse [defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period." (quoting *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020))).

Here, it appears that Mejia-Santamaria has exhausted his administrative remedies because he submitted a request for compassionate release to the warden of the facility where he is housed. Specifically, on February 16, 2021, Mejia-Santamaria submitted a request for compassionate release to the warden of CI Giles W. Dalby, claiming that his medical conditions, including hypertension (high blood pressure), hypothyroidism, gastritis, hyperlipidemia (high cholesterol), and obesity, place him at increased risk of severe illness should he contract COVID-19.  On March 9, 2021, the warden denied Mejia-Santamaria's request because there is an active

immigration detainer against him.  Although Mejia-Santamaria complied with the exhaustion requirement before filing the instant motion, nothing in his motion indicates that extraordinary and compelling reasons exist to release him from confinement.

B.   Criteria for Release

The United States Court of Appeals for the Fifth Circuit has held that when a defendant moves for compassionate release, he must establish three criteria.  *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021).   First, he must meet one of two conditions listed in § 3582(c)(1)(A)—either the defendant has extraordinary and compelling reasons that warrant a reduction under 18 U.S.C. § 3582(c)(1)(A)(i) or the defendant is at least 70 years of age, has served at least 30 years in prison, and meets the additional requirements of 18 U.S.C. § 3582(c)(1)(A)(ii).  *Id.* at 391.  Second, the defendant "must show that compassionate release is consistent with the applicable policy statements from the [United States Sentencing Commission ("Commission")]."  *Id.* at 392.  Third, the defendant "must convince the district judge to exercise discretion to grant the motion after considering the § 3553(a) factors."[1]  *Id.*; *accord United States v. Keys*, 846 F. App'x 275, 276 (5th Cir. 2021); *United States v. Cooper*, 996 F.3d 283, 287 (5th Cir. 2021).

---

[1] Section 3553(a) directs courts to consider:  the nature and circumstances of the offense and the defendant's history and characteristics;  the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;  the need to deter criminal conduct;  the need to protect the public;  the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;  the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guideline ("U.S.S.G.") provisions and policy statements;  any pertinent policy statement of the Commission in effect on the date of sentencing;  the need to avoid unwarranted disparities among similar defendants;  and the need to provide restitution to the victim.  18 U.S.C. § 3553(a).

Section 3582 (c)(1)(A)(i) does not define the "extraordinary and compelling reasons" that may merit compassionate release.  Rather, Congress elected to delegate its authority to the Commission.  *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *Cooper*, 996 F.3d at 287; *Shkambi*, 993 F.3d at 392.  Prior to the passage of the First Step Act, the Commission issued a policy statement set forth in U.S.S.G. § 1B1.13, which, along with its commentary, describes what reasons qualify as extraordinary and compelling.[2]  However, § 1B1.13 references only motions filed by "the Director of the [BOP]"—not an individual defendant.[3]  Consequently, the Fifth Circuit has held that when a defendant files a motion for compassionate release on his own behalf, the Commission's policy statement set forth in § 1B1.13 is not applicable because that policy statement governs only motions filed by the Director of the BOP.  *See Cooper*, 996 F.3d at 287-88; *Shkambi*, 993 F.3d at 392.

Nevertheless, while recognizing that they are not binding, the court views the Commission's policy statement contained in § 1B1.13 and the commentary thereto as providing guidance regarding the types of reasons that may be deemed sufficiently "extraordinary and

---

[2] In Application Note 1 to § 1B1.13 of the U.S.S.G., the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances:  (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason.  U.S.S.G. § 1B1.13 cmt. n.1.

[3] U.S.S.G. § 1B1.13 was last amended on November 1, 2018.  The Commission has, to date, been unable to amend § 1B1.13 to incorporate the changes wrought by the First Step Act due to the lack of a quorum.  The Commission consists of seven voting members and, per statute, requires four members for a quorum to amend the guidelines.  28 U.S.C. §§ 991(a), 994(a).  At present, the Commission has only one voting member.

compelling" to warrant compassionate release.  *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) ("Although not dispositive, the commentary to § 1B1.13 informs [the court's] analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release."); *United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) (upholding denial of compassionate release and recognizing that the court was guided in its analysis by the commentary to U.S.S.G. § 1B1.13).  A review of dictionary definitions also sheds light on the meaning of these terms.  The word "extraordinary" is defined as "going beyond what is usual, regular, or customary . . . exceptional to a very marked extent."  *Extraordinary*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2007); *see United States v. Mitchell*, No. 15-20609, 2021 WL 1827202, at *2 (E.D. Mich. May 7, 2021) ("'Extraordinary' is defined as 'exceptional to a very marked extent.'" (quoting *Extraordinary*, WEBSTER'S THIRD INTERNATIONAL DICTIONARY, UNABRIDGED (2020))).  "Compelling" is defined as "forceful . . . demanding attention . . . convincing."  *Compelling*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2007); *see Mitchell*, 2021 WL 1827202, at *2 ("'Compelling' is defined as 'tending to convince or convert by or as if by forcefulness of evidence.'" (quoting *Compelling*, WEBSTER'S THIRD INTERNATIONAL DICTIONARY, UNABRIDGED (2020))).  "Courts have interpreted 'extraordinary' in the context of compassionate release as 'beyond what is usual, customary, regular, or common,' and a 'compelling reason' as 'one so great that irreparable harm or injustice would result if the relief is not granted.'"  *Mitchell*, 2021 WL 1827202, at *2 (quoting *United States v. Murphy*, No. 15-20411, 2020 WL 2507619, at *5 (E.D. Mich. May 15, 2020); *United States v. Sapp*, No. 14-20520, 2020 WL 515935, at *3 (E.D. Mich. Jan. 31, 2020)).

Congress did not define "extraordinary and compelling."  Rather, it elected to delegate its authority to the United States Sentencing Commission ("the Commission").  *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."); *see also* U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 (U.S. SENTENCING COMM'N 2018) ("USSG").  In Application Note 1 to § 1B1.13 of the USSG, the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances:  (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason.  The court must also consider the factors set forth in 18 U.S.C. § 3553(a),[4] as applicable, and find that the sentence modification is consistent with the policy statements issued by the Commission.  18 U.S.C. § 3582(c)(1)(A).  The policy statement regarding compassionate release requires a determination that "the defendant is not a danger to the safety of any other person or to the community."  U.S.S.G. § 1B1.13(2).

---

[4] Section 3553(a) directs courts to consider:  the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable USSG provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim.  18 U.S.C. § 3553(a).

1.    <u>Medical Condition</u>

In the instant motion, Mejia-Santamaria, age 42, contends that he is eligible for compassionate release due to his medical problems—specifically, obesity, hypertension, and post-traumatic stress disorder ("PTSD") purportedly resulting from his service in the Colombian military.  Although not binding on the court, § 1B1.13 suggests that extraordinary and compelling reasons exist regarding a defendant's medical condition when the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)" or when a defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  U.S.S.G. § 1B1.13 cmt. n.1(A).

Here, according to Mejia-Santamaria's Presentence Investigation Report ("PSR"), prepared on October 30, 2018, and last revised on January 15, 2019, Mejia-Santamaria reported that he was 5 feet, 10 inches tall and weighed 189 pounds, giving him a body mass index ("BMI") of 27.1, which indicates he was overweight.[5]  At the time of his PSR, Mejia-Santamaria stated that he suffered from high blood pressure and pain in his left knee.  He said that he took ibuprofen for knee pain and an unknown medication for his blood pressure.  Mejia-Santamaria reported that while he was in Colombia, he was prescribed Losartan 50 mg for his high blood pressure.  Mejia-

---

[5] According to the Centers for Disease Control and Prevention ("CDC"), a BMI below 18.5 is underweight, a BMI between 18.5 and 24.9 is normal, a BMI between 25 and 29.9 is overweight, and a BMI of 30 or above is obese.

Santamaria's PSR further indicates that he reportedly has never been diagnosed or treated for any mental illness.

Mejia-Santamaria's medical records reveal that, as of January 15, 2021, he was diagnosed with obesity, hypertension, hyperlipidemia, and hypothyroidism.  He is prescribed amlodipine and aspirin to treat his high blood pressure, atorvastatin to manage his hyperlipidemia, and levothyroxine to control his hypothyroidism.  Indeed, Jennifer Urbina, N.P., determined on August 4, 2021, that Mejia-Santamaria's hypertension and hypothyroidism were controlled with medication.  Mejia-Santamaria's most recent blood pressure readings—134/86 on November 3, 2021, 123/83 on October 29, 2021, and 136/90 on October 28, 2021—confirm that his hypertension is well controlled with medication, as they show that he is merely at risk of high blood pressure.[6]

On January 12, 2021, Mejia-Santamaria was determined to be 5 feet, 8 inches tall; on October 4, 2021, he weighed 197 pounds, giving him a BMI of 30 and indicating that he is borderline obese.  Nevertheless, his most recent cholesterol reading on August 3, 2021, showed that he had a total cholesterol level of 263 mg/dL, well above the 100-199 mg/dL reference range, indicating that his cholesterol remains quite high.

Although Mejia-Santamaria states in his current motion that he has PTSD, there is nothing in his medical records indicating he has been diagnosed with the disorder.  Indeed, on January 19, 2021, Mejia-Santamaria was given a mental health screening, in which Tony Frazier, L.P.C.,

---

[6] According to the CDC, a "Normal" systolic level is less than 120 mm Hg with a diastolic of less than 80 mm Hg; the "At Risk" systolic range is 120 to 139 mm Hg with a diastolic range of 80 to 89 mm Hg; and a "High Blood Pressure" systolic level is 140 mm Hg or higher with a diastolic of 90 mm Hg or higher.

noted that Mejia-Santamaria denied having any mental health related issues.  Similarly, on January 12, 2021, Amanda Rodriguez, C.M.A., noted that Mejia-Santamaria denied having a history of mental illness or disabilities.  Mejia-Santamaria's care level is classified as stable chronic care.

None of Mejia-Santamaria's medical conditions are terminal or substantially diminish his ability to provide self-care, nor do they otherwise present extraordinary and compelling reasons justifying compassionate release.  *See Thompson*, 984 F.3d at 433.  To the contrary, most of Mejia-Santamaria's problems are well managed with medication.  *See id.*  The court acknowledges that two of Mejia-Santamaria's underlying medical conditions, obesity and hypertension, according to the CDC website, can make him more likely to become severely ill should he contract COVID-19[7]; nonetheless, such commonplace afflictions do not make Mejia-Santamaria's case "extraordinary."  *See id.* at 434.

According to the CDC, 42.5% of the adult population in the United States is obese and 73.6% is overweight.  The CDC further reports that 45% of the adults in the United States (108 million) have hypertension, and of those, only about 24% have their condition under control.  In addition, more than 12% of the adult population of the United States (29 million) has high cholesterol.  Due to their prevalence, obesity, hypertension, and hyperlipidemia cannot be deemed "extraordinary" in order to merit compassionate release.  *See United States v. Harmon*, 834 F. App'x 101, 101 (5th Cir. 2021) (affirming denial of compassionate release to a 52-year-old woman who was obese with a body mass index of 36); *Thompson*, 984 F.3d at 434 (noting that neither hypertension nor high cholesterol made the defendant's case "extraordinary" because "nearly half

---

[7] In relevant part, the CDC states that adults who have heart conditions (such as hypertension) and who are overweight or obese can be more likely to become severely ill from COVID-19.

11

of the adult population in the United States suffers from hypertension" and "roughly 12% of Americans suffer from high cholesterol"); *United States v. Hodgin*, No. 4:15-CR-40110-02-KES, 2021 WL 928179, at *3 (D.S.D. Mar. 11, 2021) (denying compassionate release to inmate who suffers from hypertension, hyperlipidemia, kidney disease, Type 2 diabetes, arthritis, and several other medical conditions); *United States v. Slone*, No. 7:12-05-KKC-4, 2021 WL 164553, at *1 (E.D. Ky. Jan. 19, 2021) (holding that inmate who suffered from heart disease (for which he had a stent), chronic obstructive pulmonary disease (COPD), high cholesterol, obesity, and depression had not established extraordinary and compelling reasons for compassionate release as his condition was not terminal and did not diminish his ability to provide self-care within the prison environment); *United States v. Grant*, No. 16-00172-01, 2021 WL 149308, at *4 (W.D. La. January 15, 2021) (noting that "while obesity is an underlying medical condition that poses increased risk of severe illness from COVID-19, courts have found that obesity—alone or even paired with other medical conditions—does not provide adequate grounds for compassionate release"); *United States v. Sentimore*, No. 04-382, 2020 WL 7630778, at *2 (E.D. La. Dec. 22, 2020) (finding that defendant's morbid obesity did not rise to the level of an extraordinary and compelling circumstance that would justify his early release); *United States v. Durham*, No. 3:18-cr-251-MOC-DCK-1, 2020 WL 5577884, at *2 (W.D.N.C. Sept. 17, 2020) (finding the fact that the defendant has hypertension, a condition that may increase his risk for severe illness from COVID-19, without more, does not present an "extraordinary and compelling reason" for compassionate release); *United States v. Wilson*, No. 2:18cr132, 2020 WL 4901714, at *5 (W.D. Wash. Aug. 20, 2020) (rejecting the notion that inmate's hypertension claim was sufficient to justify early termination of sentence); *United States v. Gordon*, No. 15-20609, 2020 WL 3971013,

12

at *3 (E.D. Mich. July 14, 2020) (denying compassionate release to an obese defendant, reasoning that because "42.4% of American adults are obese and [an] additional 32% are overweight," obesity "is not a condition so [extraordinary] that injustice would result if the relief is not granted").

Moreover, the court does not find that Mejia-Santamaria's purported PTSD constitutes an extraordinary and compelling circumstance. "Courts are . . . rightly skeptical of allowing mental health conditions to play a dominant role in a defendant's motion for compassionate release because such conditions do not inherently increase a defendant's susceptibility to COVID-19." *United States v. Falls*, No. 14-CR-74 CJW-MAR, 2020 WL 4193271, at *6 (N.D. Iowa July 21, 2020); *see United States v. James*, No. 15-cr-00255 (SRN), 2020 WL 3567835, at *4 (July 1, 2020) (holding that mental health disorders, among other things, are not known to increase a person's susceptibility to COVID-19); *United States v. Sam*, No. 17-83, 2020 WL 3415771, at *3 (E.D. La. June 22, 2020) (finding that the defendant failed to meet his burden to establish that his PTSD was an extraordinary and compelling medical condition because the disorder was not a terminal illness and did not substantially diminish the defendant's ability to provide self-care within the correctional facility); *United States v. Polnitz*, No. 17-CR-201-PP, 2020 WL 3129643, at *3-4 (E.D. Wis. June 12, 2020) (denying release where the defendant had mental health issues, moderate obesity, and asthma). Thus, when mental health concerns are validly raised in a motion for compassionate release, "courts must carefully assess the ramifications of a defendant's mental health on [his] physical health, the extent to which COVID-19 would exacerbate such ramifications, and the mental health resources available to the defendant in the [prison]." *Falls*, 2020 WL 4193271, at *6. In this case, the court finds that Mejia-Santamaria has not validly raised

any mental health concerns.  There is no evidence that Mejia-Santamaria has been diagnosed with PTSD, and he has denied having any mental health issues on multiple prior occasions.  In any event, Mejia-Santamaria fails to describe what effect, if any, his alleged PTSD has on his physical health, and the court can find no identifiable adverse consequences.  To the contrary, Mejia-Santamaria's purported PTSD "has not substantially diminished his ability to provide self-care in prison, even in light of the COVID-19 pandemic."  *United States v. Hight*, 488 F. Supp. 3d 184, 192 (E.D. Pa. 2020) (holding that a defendant's PTSD did not present extraordinary and compelling circumstances because there was no indication of the disorder in the defendant's medical records and he was still able to provide self-care in prison).

In this instance, Mejia-Santamaria's records reveal that he is housed in general population, is ambulatory, has no medical restrictions, has regular duty work assignments, and is cleared for food service.  He is able to provide self-care in the institutional setting and is not limited in his activities of daily living.  Clearly, Mejia-Santamaria's hypertension and alleged PTSD did not hamper or prevent him from committing his offense of conviction.  Thus, Mejia-Santamaria has failed to establish the existence of medical afflictions that would constitute extraordinary and compelling reasons to reduce his sentence.

2.    Other Reasons

Mejia-Santamaria also seeks compassionate release due to his post-sentence rehabilitation and the presence of COVID-19 in prison.

a.    Rehabilitation

Mejia-Santamaria maintains that his post-sentence rehabilitation, evidenced by the courses he has taken and the programs he has completed, establishes an extraordinary and compelling

reason for compassionate release.   While the court may consider rehabilitation efforts, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."  28 U.S.C. § 994(t); *see Shkambi*, 993 F.3d at 392; *United States v. Brooker*, 976 F.3d 228, 237-38 (2d Cir. 2020) (holding that a district court's discretion in sentencing is broad; however, there is a "statutory limit on what a court may consider to be extraordinary and compelling . . . [and] '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" (quoting 28 U.S.C. § 994(t))); *United States v. Hudec,* No. CR 4:91-1-1, 2020 WL 4925675, at *5 (S.D. Tex. Aug. 19, 2020) ("While the Court is permitted to consider post-sentencing rehabilitation in determining whether to grant an eligible defendant a sentence reduction, it is not authorized to grant a reduction based upon post-sentencing rehabilitation alone."); *cf. United States v. Whitehead*, 986 F.3d 547, 551 (5th Cir. 2021) (upholding the denial of a sentence reduction from a life sentence and finding that the court may, but is not required, to consider a defendant's post-conviction rehabilitative efforts when evaluating a motion for reduction under § 404 of the First Step Act).

While Mejia-Satamaria has maintained a good disciplinary record while incarcerated and claims that he will be deported to Colombia upon his release from custody, ensuring that he will not pose a risk to society, the Seventh Circuit has found neither of these arguments to be extraordinary or compelling.  *United States v. Ugbah*, 4 F.4th 595, 597 (7th Cir. 2021) (rejecting compassionate release of a Nigerian inmate reasoning that "[m]ost nonviolent criminals maintain good disciplinary records" and that his removal to Nigeria "was known from the outset and played a role in setting the original sentence").  Moreover, in light of Mejia-Santamaria's offense of conviction, involving his participation in an international drug-trafficking organization, the court

15

finds that "[s]ending [Mejia-Santamaria] overseas will not guarantee the safety of people in this nation or any other." *Id.*

Thus, although Mejia-Santamaria lists some commendable achievements and laudable goals, he has not presented any extraordinary and compelling accomplishments or circumstances that merit compassionate release under the facts of this case. *See United States v. Lewis*, No. 17-CR-28-FPG, 2021 WL 4519795, at *3 (W.D.N.Y. Oct. 4, 2021) (finding defendant's efforts at rehabilitation and plans to start a new life elsewhere to be commendable and recognizing the unusual burdens he faced in prison but finding those considerations not to undermine the factors that led to his original sentence—his offense, his criminal history, and the need for deterrence); *United States v. Boyd*, No. 3:17-CR-37-TAV-DCP-4, 2021 WL 4497476, at *4 (E.D. Tenn. Sept. 30, 2021) (the court, while recognizing defendant's efforts to improve himself, did not find his rehabilitation efforts to be so extraordinary as to outweigh the other sentencing factors); *United States v. Willsey*, No. 3:00-cr-00438-HZ, 2021 WL 4462889, at *2 (D. Ore. Sept. 28, 2021) (although finding defendant's steps toward rehabilitation to be laudable, the court ruled that they did not present an extraordinary circumstance that would justify compassionate release, particularly given the seriousness of his offenses of conviction); *United States v. Rounds*, No. 10-CR-239S (2), 2021 WL 4437170, at *4 (W.D.N.Y. Sept. 28, 2021) (commenting that defendant's efforts at rehabilitating himself were laudable and should be continued, but concluding that they did not alone or in combination with his other arguments constitute an extraordinary and compelling reason for compassionate release). Similarly, the court hopes that Mejia-Santamaria will continue on the path to rehabilitation, but declines to exercise its discretionary authority under § 3582 based on his rehabilitation efforts. *See Lewis*, 2021 WL 4519795, at *3.

16

b.    COVID-19

Mejia-Santamaria further maintains that if he contracts COVID-19 it will be fatal for him due to prison overcrowding and there being no way to distance himself from other inmates. Nevertheless, as of November 3, 2021, the figures available at www.bop.gov list 0 inmates (out of a total inmate population of 1,753) at CI Giles W. Dalby as having confirmed positive cases of COVID-19, 100 inmates who have recovered, and 3 inmates who succumbed to the disease. Thus, it appears that the facility where Mejia-Santamaria is housed is handling the outbreak appropriately and providing adequate medical care.

Although Mejia-Santamaria expresses legitimate concerns regarding COVID-19, he does not establish that prison officials cannot manage the outbreak within his correctional facility or that the facility is specifically unable to treat Mejia-Santamaria, if he were to contract the virus and develop COVID-19 symptoms, while incarcerated.  *See Thompson*, 984 F.3d at 435 ("Fear of COVID doesn't automatically entitle a prisoner to release."); *Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Banks*, No. CR 15-0080-02, 2020 WL 6839267, at *4 (W.D. La. Nov. 20, 2020) ("This Court cannot equate the generalized fear of COVID-19 to an extraordinary and compelling reason to support compassionate release, nor will it undermine BOP's criteria to determine eligibility for sentence reductions or home confinement."); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the

extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, 455 F. Supp. 3d 285, 292 (W.D. La. 2020))); *United States v. Clark*, 451 F. Supp. 3d 651, 656 (M.D. La. 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification"). Furthermore, contracting the virus while incarcerated, even in conjunction with preexisting health conditions, is insufficient to establish exceptional and compelling circumstances warranting compassionate release. *See United States v. Jackson*, No. 3:16-CR-196-L-1, 2020 WL 4365633, at *2 (N.D. Tex. July 30, 2020) (finding that defendant had failed to present extraordinary and compelling reasons for compassionate release despite suffering from previous underlying health conditions and testing positive for COVID-19).

Moreover, the prison system is in the process of administering the COVID-19 vaccine to inmates and staff. Indeed, according to Mejia-Santamaria's medical records, he received the first dose of the Moderna vaccine on May 13, 2021, and the second dose on June 21, 2021. In the Fifth Circuit and elsewhere, courts have denied early release to inmates with a variety of medical conditions who have been vaccinated for COVID-19. *See United States v. Walker*, No. 20-cr-20027, 2021 WL 2474088, at *3 (C.D. Ill. June 17, 2021) (holding that because defendant was fully vaccinated, his underlying health conditions—diabetes, heart disease, high blood pressure, asthma, and substance abuse—alone, were insufficient to establish extraordinary and compelling reasons justifying compassionate release); *United States v. Parham*, No. 1:19-CR-133-LG-RHW-1, 2021 WL 1911899, at *2 (S.D. Miss. May 12, 2021) (finding that

"generalized concerns of contracting COVID-19[] are not an 'extraordinary and compelling reason'" where the defendant had received the COVID-19 vaccine); *United States v. Meyer*, No 1:14-cr-00148-01-MC, 2021 WL 1895240, at *1-2 (D. Ore. May 11, 2021) (denying compassionate release to inmate with heart disease, obesity, hyperlipidemia, and a history of smoking because he was fully vaccinated and there was a low infection rate at the facility where he was housed); *United States v. Schad*, No. CR 2:17-225-3, 2021 WL 1845548, at *4 (S.D. Tex. May 5, 2021) (denying compassionate release where the defendant had been fully vaccinated against COVID-19); *United States v. Grummer*, No. 08-CR-4402-DMS, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021) (denying compassionate release and noting that "[a]lthough Defendant suffers from several chronic medical conditions, his vaccination significantly mitigates the risk that he will contract COVID-19"); *United States v. Beltran*, No. 6:16-CR-00004, 2021 WL 398491, at *3 (S.D. Tex. Feb. 1, 2021) (denying compassionate release to a high-risk inmate with myriad underlying medical conditions who received the vaccine, finding that "vaccination significantly reduces [the] risk of contracting COVID-19 or experiencing complications related to a COVID-19 infection"); *accord United States v. Nunez-Arias*, No. CR H-16-436, 2021 WL 1537323, at *3 (S.D. Tex. Apr. 19, 2021).

Moreover, it is well settled that "compassionate release is discretionary, not mandatory." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020).  In exercising its discretion, the court finds that Mejia-Santamaria has failed to establish that his medical condition or other reasons constitute extraordinary and compelling reasons to reduce his sentence and release him from confinement.

3.      Section 3553(a) Factors

The court further finds that compassionate release is not merited in light of the applicable factors set forth in 18 U.S.C. § 3553(a).  *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *United States v. Shorter*, 850 F. App'x 327, 328 (5th Cir. 2021) (finding that the court did not abuse its discretion in denying compassionate release after balancing the 3553(a) factors); *Keys*, 846 F. App'x at 276; *Shkambi*, 993 F.3d at 392; *Thompson*, 984 F.3d at 435 n.11 (collecting cases); *Chambliss*, 948 F.3d at 693-94.  Mejia-Santamaria's conviction stems from his participation in a large-scale, international drug-trafficking conspiracy.

The conspiracy utilized go-fast vessels to transport large quantities of cocaine from Colombia to Central America.  Mejia-Santamaria pleaded guilty to the offense and admitted that he provided information and protection to coconspirators who were manufacturing and distributing kilogram quantities of cocaine which would then be distributed to other coconspirators for distribution in the Northern and Eastern Districts of Texas.  Notably, Mejia-Santamaria stipulated that he knew that the conspiracy involved the distribution of 450 kilograms or more of cocaine. In view of the circumstances surrounding his offense of conviction, the court cannot conclude that he would not pose a danger to any other person or to the community, if released from prison at this time.

In addition, granting Mejia-Santamaria compassionate release would fail to provide just punishment for his offense and promote respect for the law.  In *Chambliss*, the Fifth Circuit upheld the denial of compassionate release due to the defendant's not yet having served a sufficient portion of his sentence.  948 F.3d at 694.  The district court determined that the defendant's

20

terminal illness "constitut[ed] 'an extraordinary and compelling reason for a sentence reduction' and that he '[did] not present a danger upon release,'" but denied release because "releasing [the defendant] after serving only 14 years of a 30-year sentence minimizes both the impact of [the defendant's] crime and seriousness of the offense." *Id.* at 693-94. "Moreover, the [district] court, citing the § 3553(a) factors, determined that requiring [the defendant] to serve the remainder of his sentence would 'provide just punishment for the offense' and 'afford adequate deterrence to criminal conduct.'" *Chambliss*, 948 F.3d at 693-94; *see Thompson*, 984 F.3d at 434-35 (observing that the courts that have granted compassionate release "largely have done so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns"). In the instant case, releasing Mejia-Santamaria after he has served only 48 months (or approximately 36%) of his 135-month sentence would similarly minimize the impact of his crime and the seriousness of his offense as well as fall short of providing just punishment and adequate deterrence to criminal conduct.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, 447 F. Supp. 3d 399, 403 (D. Md. 2020)). In this instance, there is no reason to believe that Mejia-Santamaria would not revert to his prior drug-dealing activities if released from prison at this time.

III.  Conclusion

In sum, Mejia-Santamaria has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere.

*See United States v. Dodge*, No. 17-323-01, 2020 WL 3668765, at *5 (W.D. La. July 6, 2020) (stressing that "the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances"); *Koons*, 455 F. Supp. 3d at 291-92 (same).  As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." *Dodge*, 2020 WL 3668765, at *6; *Koons*, 455 F. Supp. 3d at 292.

Consistent with the foregoing analysis, Mejia-Santamaria's *pro se* Motion for Compassionate Release (#165) is DENIED.

SIGNED at Beaumont, Texas, this 10th day of November, 2021.

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE